**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

JACOB W. BURKE,          )
      Plaintiff,        )
                     )
      v.                )     CAUSE NO.: 1:18-CV-157-PRC
                     )
NANCY A. BERRYHILL,     )
Deputy Commissioner for Operations,  )
Social Security Administration,     )
      Defendant.      )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Jacob W. Burke on May 30, 2018, and a Social Security Opening Brief of Plaintiff [DE 16], filed on September 24, 2018. Plaintiff requests that the May 19, 2017 decision of the Administrative Law Judge denying his claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On October 31, 2018, the Commissioner filed a response, and Plaintiff filed a reply on November 19, 2018. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On October 28, 2014, and October 31, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income, respectively, alleging disability beginning July 20, 2013. The applications were denied initially and on reconsideration. Plaintiff requested a hearing, and, on January 20, 2017, Administrative Law Judge Stephanie Katich ("ALJ") held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's friend, Plaintiff's parents, Plaintiff's attorney, and an impartial vocational expert. On May 19, 2017, the ALJ issued an unfavorable decision, making the following findings:

1.	The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.

2.	The claimant has not engaged in substantial gainful activity since July 20, 2013, the alleged onset date.

3.	The claimant has the following severe impairments: diabetic polyneuropathy bilateral feet, chronic venous insufficiency, varicosity in the lower extremities, venous stasis dermatitis, diabetes with resulting diabetic retinopathy with macular edema, status post right eye vitrectomy, and obesity.

4.	The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.	After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that he can stand and/or walk, in combination, for two hours during an eight-hour workday, sit for six hours throughout the eight-hour workday, and lift, carry, push and pull up to ten pounds frequently and twenty pounds occasionally. As to postural changes, he can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, but can never crawl or climb ladders, ropes, and scaffolds. Regarding visual tasks, the claimant is able to read print with a font size of 20-24, can perform work activities requiring frequent near acuity, and he should avoid work activity requiring nighttime driving. With respect to his work environment, he should avoid all exposure to unprotected heights, dangerous moving machinery, and wet, slippery, or uneven surfaces.

6.	The claimant is unable to perform any past relevant work.

7.	The claimant was born [in 1972] and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.	The claimant has at least a high school education and is able to communicate in English.

9.	Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.	Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.    The claimant has not been under a disability, as defined in the Social Security Act, from July 20, 2013, through the date of this decision.

(AR 17-30).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an

ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity (RFC). The RFC "is an administrative assessment of what work-related activities an individual can perform despite his limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

In this appeal, Plaintiff argues that (1) the ALJ's residual functional capacity assessment is inadequate because the ALJ included improperly analyzed Plaintiff's physical limitations and included no mental limitations, (2) the ALJ's assessment of Plaintiff's subjective symptoms is not supported by substantial evidence, and (3) the Appeals Council erred in finding that two physician statements submitted to the Appeals Council were not "new and material." The Court considers each argument in turn.

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing'

basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, at *1.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

The Court first considers Plaintiff's argument that the ALJ's assessment of Plaintiff's physical residual functional capacity is incomplete. Specifically, Plaintiff argues that the ALJ had no basis in the medical evidence for the visual limitations included in the RFC and that the ALJ failed to address Plaintiff's bilateral hand neuropathy and his allegations of decreased energy. The Court finds that remand is required to allow the ALJ to provide a logical bridge between the evidence of Plaintiff's visual impairments and the determination that Plaintiff can frequently perform near visual acuity.

The medical evidence shows that Plaintiff's diabetes has resulted in retinopathy and macular edema. (AR 317, 366, 389, 633, 795). His eye complications have progressed, involving proliferative retinopathy in both eyes and repeated episodes of vitreous hemorrhaging. (AR 623-24, 835-36, 845, 860-61, 864, 881, 1301, 1305). Macular edema in his right eye causes a "spot"

obscuring his central vision, and he has a cataract in the right eye. (AR 316, 624, 794, 838, 875, 1299). Plaintiff's retinal specialist directs him to sleep with his back at a 45-degree angle to help drain bleeding from his eyes, and he must avoid straining or strenuous activities. (AR 389, 619, 858, 861). Plaintiff has had repeated intravitreal Avastin injections and laser procedures to both eyes. (AR 365, 479, 619, 623-24, 763, 1301). The report of an April 3, 2013 examination by Dr. Richard L. Windsor indicates that Plaintiff has severe sensitivity to glare and photophobia, including indoors, and he is "much more impaired than what [h]is visual acuity would indicate owning to his loss of contrast sensitivity." (AR 491). As a result, objects "tend to blend together as the eyes cannot appreciate subtle contrast changes." (AR 490). Plaintiff wears one pair of glasses for distance and dedicated bifocals for computer use, both with contrast filters, and wears amber "fitovers" outdoors. (AR 490, 493-94). Plaintiff has to magnify text on a computer. (AR 479, 802). Plaintiff has reduced depth perception. (AR 490, 794, 801-03).

At the hearing, Plaintiff testified that he is able to drive during the day and at night and does not have any limitations. (AR 52). He testified that he has "a blot" or blurry spot in his right eye that moves as his eye moves, stating, "It's blurred out." (AR 56). He testified that the vision in the left eye is not as bad as his right eye, "but it's still not all that great." *Id*.

In the RFC, the ALJ limited Plaintiff to reading print with a font size of 20-24, performing work activities requiring frequent near acuity, and avoiding nighttime driving. (AR 23). The ALJ further limited Plaintiff to avoiding all exposure to unprotected heights, dangerous moving machinery, and wet, slippery, or uneven surfaces. *Id*. In support, the ALJ discussed the medical evidence in detail.

First, the ALJ notes that, although Plaintiff's attorney asserted that Plaintiff is blind in his right eye based on a treatment record, the ALJ weighed the record as Plaintiff's report of his own condition and then went on to discuss all of the other medical evidence regarding Plaintiff's vision. (AR 24-25, 389). The record was a February 12, 2015 Parkview note for treatment of cellulitis that indicated that Plaintiff reported that he is "blind in his right eye for retinopathy" and that "he's had laser treatments and injections in his eye as well." (AR 24, 389).

The ALJ noted that Plaintiff drives and that he does not have any visual restrictions on his drivers license. (AR 24). The ALJ then noted that Plaintiff worked for one tax season as a tax preparer, which the vocational expert testified required frequent as well as close to constant near visual acuity. *Id*. The ALJ found that Plaintiff's duties in that job were not consistent with visual problems to the extent alleged. *Id*. (As discussed later in this Opinion, the ALJ's failure to consider the tax preparer job as Plaintiff actually performed the job rather than as described by the vocational expert based on the Dictionary of Occupational Titles renders this finding unsupported by the evidence.)

The ALJ then found that the medical evidence of diabetic macular edema in both eyes, proliferative diabetic retinopathy in the left eye, and non-proliferative diabetic retinopathy in the right eye supports a finding of severe visual impairments but that the evidence is not consistent with the degree of limitation alleged. *Id.* The ALJ then reviewed that medical evidence, beginning with an April 2013 exam by Dr. Windsor showing Plaintiff to have profoundly impaired contrast sensitivity and severe glare and photophobia. (AR 24) (citing Exs. B12F, B20F). The ALJ noted that Dr. Windsor had Plaintiff use dedicated computer correction in the form of a bifocal to help him see the computer better and that Dr. Windsor prescribed amber fit-over lenses to help with light and

glare. *Id*. The ALJ found it noteworthy that the exam was done at the request of Vocational Rehabilitation Services, which was working with Plaintiff to help him obtain employment. *Id*.

The ALJ then noted that Plaintiff underwent significant treatment for his vision problems, including pan-retinal photocoagulation laser procedures, Avastin injections, and most recently right eye vitrectomy. *Id*. But, the ALJ contrasted that treatment history with an August 2016 follow-up record showing that Plaintiff's right eye was fairly "stable" following the vitrectomy. *Id*. (citing Exs. B16F, B32F). The ALJ observed that the retinal surgeon noted a little bit of macular edema but that it did not need treatment. *Id*. The ALJ noted that there was evidence of recurrent left eye proliferative disease, areas of retina ischemia, and some diffuse macular thickening that the surgeon treated with a laser procedure and Avastin injection, which stabilized both the macular edema and proliferative disease. *Id*. The ALJ noted that the record found visual acuity for the right eye was 20/50+ and for the left eye was 20/30+. *Id*. The ALJ concluded that the treatment records demonstrate that examinations by different healthcare providers, including the retinal surgeon Dr. Walker, the vitreo-retinal specialist Dr. Salam, and the optometrist Dr. Windsor have generally shown Plaintiff to have visual acuity with correction that is within normal limits. *Id*. (citing Exs. B1F, B12F, B15F, B16F, B20F, B22F, B32F).

Nevertheless, the ALJ went on to examine the opinion evidence because, despite the treatment, the ALJ found that Plaintiff has significant visual impairments that likely limit his capacity to work. (AR 25); *see* 20 C.F.R. §§ 404.1529, 416.929; 20 C.F.R. §§ 404.1527(d), (e), (f), 416.927(d), (e), (f). The ALJ considered and gave no weight to the opinions of medical consultant Dr. Joshua Eskonen and Dr. J. Sands, both of whom evaluated Plaintiff on behalf of the state agency and determined that Plaintiff did not have any visual limitations. (AR 25) (citing Exs. B2A, B3A,

B6A, B7A). The ALJ explained that the determination of no visual impairment is inconsistent with the medical evidence of record as well as with the records from Vocational Rehabilitation Services that note Plaintiff reads large print and needs 20 to 24 size print to read comfortably. (AR 25) (citing Ex. B20F). The ALJ found the opinions inconsistent with Dr. Windsor's advice that Plaintiff limit his driving to daytime only. (AR 25) (citing Ex. B12F).

The ALJ also found the opinions contrary to the RFC assessed by the previous ALJ who had assessed visual limitations. *Id*. (citing Ex. B1A).The ALJ gave deference to the prior ALJ's findings, in particular the assessment that Plaintiff could perform work that involved at least frequent near visual acuity. *Id*. The prior ALJ's determination is the only basis offered by the ALJ for this finding of frequent near visual acuity. Thus, although the ALJ thoroughly discussed the medical evidence of record, the ALJ did not provide any evidentiary basis for finding that Plaintiff could perform frequent near visual acuity. The ALJ's reliance on the prior ALJ's determination is insufficient because the prior ALJ did not base the limitation on medical evidence but rather "due to possible vision problems." *See* (AR 94). At the time of the prior ALJ's decision, the consultative examiner found Plaintiff's vision to be 20/20. *Id*. Plaintiff's vision is now 20/50+ in the right eye and 20/30+ in the left eye, as acknowledged by the ALJ, (AR 24); however, the ALJ did not discuss how this change affects Plaintiff's near visual acuity. Nor does the ALJ discuss how the development of Plaintiff's eye disease and subsequent treatment since the first ALJ's decision may have degraded Plaintiff's ability to perform near visual acuity up to two-thirds of the day. Notably, the Commissioner offers no substantive response to Plaintiff's argument that the ALJ did not provide a basis for the limitation to frequent near visual acuity. The Court finds that remand is necessary for the ALJ to explain the basis for the determination that Plaintiff can perform near visual acuity

frequently, which is up to two-thirds of a work day on a regular and continuing basis. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) ("The ALJ must adequately discuss the issue and must build an 'accurate and logical bridge from the evidence to his conclusion.'" (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003))).

As for Plaintiff's hand neuropathy, Plaintiff argues that, despite acknowledging neuropathy of the hands, the ALJ only identified "diabetic polyneuropathy bilateral feet" and did not find a severe impairment based on neuropathy of the hands. *See* (AR 17). In the decision, the ALJ acknowledged Plaintiff's testimony that he is unable to work due to neuropathy in his hands, among other things. (AR 24). The ALJ then explicitly stated that she was considering Plaintiff's "allegations that his ability to work is limited by neuropathy in his hands and feet," noting that Plaintiff "elaborated that due to his neuropathy he gets sporadic sharp pains that 'jump' to different places and his hands/feet are numb." (AR 25). The ALJ then thoroughly discussed the evidence regarding Plaintiff's diabetes, cellulitis, and lower extremity edema, but there is no further discussion of neuropathy in Plaintiff's hands. The Court's review of the numerous record pages cited by Plaintiff in support of neuropathy of the hands reveals only two instances in which neuropathy of the hands is mentioned in Plaintiff's medical records. *See* (AR 315, 317, 365, 366, 371, 389, 457, 470, 597, 633, 769, 795). First, orientation and mobility specialist Mindyann Meadows, completing a January 15, 2013 visual assessment as part of a psychological report, listed under "Medical Information" and "Additional Disabilities" that Plaintiff "stated he has neuropathy in hands and [feet]" but that he "also stated he is still able to feel with the neuropathy." (AR 795). Second, in a February 12, 2015 Parkview treatment record for cellulitis of a different part of the body, under the heading "Review of Symptoms" and the subheading "Neurological" is written, "He has a stocking

12

glove distribution of neuropathy symptoms at this time." (AR 389). The ALJ questioned Plaintiff about this at the hearing. (AR 60).

There do not appear to be any medical records for treatment of hand neuropathy. Although Plaintiff's hearing testimony mentions neuropathy in his "hands and feet," he did not testify as to any limitations related to his hands. And, at the January 26, 2015 consultative examination, the examiner found that Plaintiff "was able to grip and grasp with both hands. Grip strength in the right hand was 80 lbs. and 55 lbs in the left hand. He as able to reach forward, push or pull with the upper extremities." (AR 366). The examiner also noted that Plaintiff "was able to use the hands for fine coordination and manipulative tasks; he was able to tie knots, do buttons, do shoelaces, pick up coins, hold pens, turn door handles, pull zippers and do fine fingering movements." (AR 366). Therefore, the Court finds that the ALJ's failure to include any further discussion of Plaintiff's hand neuropathy would not warrant remand on its own because there is no indication in the record of limitations. However, because the case is being remanded on other grounds, the ALJ will have an opportunity to complete the discussion of Plaintiff's allegations of hand neuropathy. *See, e.g.*, *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012). Likewise, regarding Plaintiff's allegations of depleted energy and fatigue, which the ALJ acknowledged but did not discuss in formulating the RFC, *see* (AR 18, 24), the ALJ will have an opportunity to discuss whether Plaintiff's depleted energy and fatigue require any functional limitations in the RFC.

Next, Plaintiff argues that the ALJ erred by not including any mental limitations in the RFC and by not explaining why she did not include any such limitations. Plaintiff is correct that there are no mental limitations in the RFC. At step two of the sequential analysis, the ALJ found that Plaintiff's memory difficulties are not a medically determinable impairment and that Plaintiff's

depression and personality disorder, although medically determinable impairments, are not severe. (AR 18-22). Plaintiff asserts that the ALJ erred in these determinations and that the error is not harmless because Plaintiff suffers limitations from the nonsevere mental impairments that should have been included in the RFC. Although the failure to correctly evaluate the severity of an impairment at step two does not automatically require remand, a correct assessment is important to the analysis of later steps of the sequential analysis, such as determining the residual functional capacity. *See Farrell v. Astrue*, 692 F.3d 767, 772 (7th Cir. 2012).

Regarding Plaintiff's memory difficulties, on remand, the ALJ is directed to consider whether to supplement the record with the medical records from the previous proceedings that may address Plaintiff's alleged treatment in 1998 for exposure to chemicals that affected his memory, which is mentioned anecdotally in several places in the current record. *See* (AR 985, 1001, 1004-05). The ALJ is further directed to consider whether the RFC should include limitations such as those recommended by Benjamin Cunningham, Ed. S., in his January 15, 2013 Psychological Report, which the ALJ acknowledged in her decision but did not adopt such as "both written and verbal directions in the workplace, an outline that explain[s] daily responsibilities, and a detailed schedule as a reminder of expectations." (AR 19); *see also* (AR 789). Benjamin Cunningham's report provides, "Both Working Memory and Processing Speed skills fell in the borderline range and were significantly discrepant from all other index scores." (AR 789). The ALJ is also directed to consider evidence that Plaintiff complained of diminished memory to health care providers, including while undergoing mental health treatment. (AR 801-03, 985, 1001, 1004-05, 1062, 1080).

As for Plaintiff's depression and personality disorder, the ALJ accepted both as medically determinable impairments but found that they were not "severe" at step two of the sequential

evaluation. (AR 20). The ALJ provided a thorough discussion of the medical records regarding these mental impairments and concluded that, because they do not cause more than "mild" limitation in any of the functional areas, they are non-severe. (AR 22). However, while the ALJ discussed the records showing Plaintiff's improvement, the ALJ did not discuss the treatment records from Park Center in which Plaintiff reported symptoms of depression, poor anger control, poor judgment, memory deficits, and social difficulty throughout the relevant time period. *See* (AR 354, 361, 935, 951, 985-86, 1001, 1018, 1062, 1108, 1128, 1130, 1132, 1138, 1157, 1162); *Godbey v. Apfel*, 238 F.3d 803, 807-08 (7th Cir. 2000). This is important because, although Plaintiff's conditions improved, the ALJ did not consider whether limitations related to the non-severe mental impairments nevertheless should be incorporated in the RFC. In fact, the ALJ did not include any discussion of Plaintiff's mental impairments in the RFC analysis. The vocational expert testified that certain jobs would be eliminated with the addition of social restrictions, reduced pace, or a need for extra supervision or re-teaching tasks. (AR 73-77). On remand, the ALJ is directed to discuss whether limitations from Plaintiff's non-severe depression and personality disorder should be incorporated in the RFC. *See* 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); *Craft*, 539 F.3d at 676.

In his brief, Plaintiff also argues that the ALJ erred in considering his subjective allegations of cognitive deficits and of visual limitations. As for Plaintiff's "cognitive defects," the ALJ noted that Plaintiff "presented at the hearing with considerable cognitive slowing, slow mentation and with significant memory deficits." (AR 18). Nevertheless, the ALJ found that Plaintiff's medically determinable mental impairments were non-severe, in part because the ALJ found that certain

treatment records were not consistent with Plaintiff's mental health allegations or his hearing presentation. (AR 19-20, 22). Plaintiff criticizes the ALJ's treatment of several aspects of the records on which the ALJ relied, namely Plaintiff's Global Assessment of Functioning score at the January 2013 psychological evaluation, ability to work as a tax preparer, having been fired from a job because he hit a parked car rather than because of his limitations, his presentation at both January 2015 consultative examinations, his daily and social activities, and his mental health treatment records. *See* (ECF 16, p. 14). Plaintiff's argument is not well taken. All of these aspects of the record discussed by the ALJ are factors that the ALJ is directed to consider in assessing a claimant's subjective allegations. *See* 20 C.F.R. §§ 1529(c), 416.929(c). Because Plaintiff disagrees with the ALJ's weighing of these factors, Plaintiff is asking the Court to re-weigh the evidence, which the Court will not do. *See Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014); *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). The ALJ created a logical bridge between the evidence and the determination that Plaintiff's mental impairments are not severe.

As for the ALJ's consideration of the evidence regarding Plaintiff's vision impairments, the ALJ found that Plaintiff's work as a tax preparer was not consistent with the extent of visual problems he alleged because the vocational expert testified that the position would require frequent-to-constant near acuity. (AR 24, 78-79). However, the ALJ did not explore how Plaintiff actually performed his duties as a tax preparer; the vocational expert's testimony was based on the Dictionary of Occupational Titles. (AR 78-79). The ALJ's speculation that Plaintiff performed the job of tax preparer in accordance with the description of the position in the Dictionary of Occupational Titles cannot support a finding of inconsistency in relation to Plaintiff's allegations regarding his visual impairments. This error is not harmless because, as discussed above, the ALJ also found that

Plaintiff could frequently perform near visual acuity without identifying any medical basis for that determination. On remand, the ALJ is directed to explore how Plaintiff actually performed the job of tax preparer in assessing Plaintiff's ability to perform near visual acuity.

Finally, Plaintiff argues that remand is required because the Appeals Council erred in finding that statements by Dr. Walker and Dr. Coats presented for the first time to the Appeals Council were not "new and material." (ECF 16, p. 18). Because the Court is remanding based on errors by the ALJ, the Court declines to address this argument regarding the proceedings before the Appeals Council.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in the Social Security Opening Brief of Plaintiff [DE 16], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 20th day of December, 2018.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT